**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOSEPH LEE McCULLOUGH,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-CV-183-JFH-JAR** |
| **CHRIS BRYANT, et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

Plaintiff Joseph Lee McCullough ("McCullough"), appearing *pro se* and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 1. McCullough alleges, generally, that while detained at the Carter County Detention Center the named Defendants were deliberately indifferent to his medical needs and violated his constitutional rights. *See id.* Defendant Devra Atwood ("Atwood"), in her individual and official capacities, filed a Motion to Dismiss ("Motion") arguing McCullough failed to state a claim against her and she is entitled to qualified immunity. Dkt. No. 148. McCullough filed a response in opposition [Dkt. No. 149], and Atwood filed a reply in support of her Motion. Dkt. No. 152.

## FACTUAL BACKGROUND

On October 22, 2023, McCullough was booked into the Carter County Detention Center after being discharged from Mercy Memorial Hospital. Dkt. No. 1 at 9.[1] At the time, McCullough had "5 fractured ribs, 2 lacerations on [his] liver, 1 laceration on [his] lung and a broken wrist in a half cast." *Id.* McCullough was scheduled for surgery on his wrist two (2) weeks after his release from the hospital. *Id.* Generally, while detained at Carter County Detention Center, McCullough

[1] The Court's citations refer to the CM/ECF header pagination.

alleges he was denied proper medical care from October 22, 2023, until January 25, 2024, when he was finally taken to a follow-up appointment that was originally scheduled for November 2024. *Id.* at 12. McCullough alleges, because of the denied medical care, his wounds became infected and his hand became "nerve damaged" "with little range of motion and loss of strength." *Id.* at 11, 13. He also alleges he is "constantly in pain[.]" *Id.*

McCullough named six (6) Defendants: (1) Chris Bryant, Sheriff of Carter County; (2) Amanda Honeycutt, LPN at Carter County Detention Center; (3) Molly LNU, LPN at Carter County Detention Center; (4) Josephine Otoo, Nurse Practitioner at Carter County Detention Center; (5) Devra Atwood, Jail Administrator; and (6) Turnkey LLC, the health care provider at Carter County Detention Center. Dkt. No. 1 at 4-6. McCullough asserts claims against the named Defendants for deliberate indifference to his medical needs. *See* Dkt. No. 1. As noted, Defendant Atwood seeks dismissal of McCullough's claims against her for failure to state a claim. *See* Dkt. No. 148.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for failure to state a claim upon which relief can be granted "only when it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc*., 104 F.3d 1215, 1224 (10th Cir. 1997)). When determining whether to grant a motion to dismiss, the district court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Jojola v. Chaves*, 55 F.3d 488, 494 (10th Cir. 1995). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (internal quotations and citations omitted).

A request for dismissal pursuant to Rule 12(b)(6) requires the Court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is required to exercise a liberal interpretation of McCullough's pleadings, *Haines v. Kerner*, 404 U.S. 520-21 (1972), the Court need not assume the role of advocate for McCullough, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## ANALYSIS

### I. Official Capacity Claim

McCullough indicates he is suing Atwood in her official capacity. Dkt. No. 1 at 2, 5. McCullough identifies Atwood as the "Jail Administrator of Carter County Detention Center." *Id.* at 5. Atwood argues she cannot be sued in her official capacity as the jail administrator because she does not have final policymaking authority. Dkt. No. 148 at 2-3.

In the § 1983 context, a claim against a state actor in her official capacity "is essentially

another way of pleading an action against the county or municipality" she represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). More specifically, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has recognized that a municipality can be liable under § 1983 if the "final policymaker" takes the unconstitutional action. *Melton v. City of Okla. City*, 879 F.2d 706, 724 (10th Cir. 1989), *rev'd en banc in part on other grounds*, 928 F.2d 920 (10th Cir. 1991). Municipal liability may also be found even though the action is taken by an individual other than the final policymaker in two situations: (1) the existence of a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; or (2) if a subordinate's position is subject to review by the municipality's authorized policymaker and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification is chargeable to the municipality. *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

Therefore, Atwood's position that she cannot be sued in her official capacity because she is not a final policymaker is misplaced. *See Yelton v. Bd. of Cnty. Comm'rs,* No. CIV-21-1001-G, 2024 WL 4415256, at *4 (W.D. Okla. Mar. 18, 2024) (unpublished)[2] (Noting that whether a defendant "possesses final policymaking authority is not relevant to whether she may be sued in her official capacity."). Here, McCullough alleges Atwood denied him surgery because Sheriff Chris Bryant would not pay for an expensive surgery. Dkt. No. 1 at 10. The sheriff has charge of the county jail and its prisoners. Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, §§ 47, 52; *see also Lopez v. LeMaster,* 172 F.3d 756, 763 (10th Cir. 1999) ("Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein."). Therefore, at this stage of the proceeding,

[2] The Court cites all unpublished decisions herein as persuasive authority. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

McCullough alleged an official capacity claim against Atwood based on her denying McCullough's surgery and Sheriff Chris Bryant ratifying that decision.[3]

However, as noted, McCullough has also sued DJ Long, the Sheriff of Carter County, in his official capacity. *See* Dkt. No. 53. There is no need to retain redundant claims, all of which seek to impose liability on Carter County. For this reason, the Court dismisses the official capacity claims against Atwood. *See Yelton*, 2024 WL 4415256, at *5 (Dismissing official capacity claims against jail administrator as redundant where county sheriff was sued in his official capacity).

## II. Individual Capacity Claim

As it relates to Atwood, individually, McCullough alleges, after he was discharged from the hospital, he inquired about his surgery and Atwood told him he "wasn't going to receive any surgery." Dkt. No. 1 at 10. Atwood communicated, "Bryant and Turnkey are not paying for any expensive surgery for somebody with 1st degree manslaughter charges." *Id.* McCullough also alleges he submitted "multiple tickets" to Atwood regarding the lack of medical attention and medications. *Id.* Further, his mother provided copies of his medical records to Atwood, and his mother communicated to Atwood that the nurses were not giving McCullough his "medication prescribed, changing [his] dressing or taking [him] to any follow-up appointments." *Id.* at 11.

Under the Eighth Amendment, jail officials "must provide humane conditions of confinement," i.e., they "must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

[3] Since the filing of this lawsuit, Chris Bryant is no longer the Sheriff of Carter County. Dkt. No. 53 at 1. Therefore, Chris Bryant's successor, DJ Long, in his official capacity as Sheriff of Carter County, was substituted in place of Chris Bryant in all pending official capacity claims against Chris Bryant. Dkt. No. 53.

"Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985)). A violation of such rights under the Eighth Amendment gives rise to a civil rights claim under 42 U.S.C. § 1983. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To state a plausible claim based on the failure to provide medical care, a plaintiff must allege facts evidencing "deliberate indifference to [his] serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To satisfy the deliberate-indifference standard, a plaintiff must plausibly allege: (1) a harm that was objectively "sufficiently serious," *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006), and (2) that the defendant subjectively "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837.

Atwood does not challenge the sufficiently serious prong. Dkt. No. 148 at 6. Instead, Atwood contends McCullough failed to allege Atwood knew of and disregarded an excessive risk to McCullough's health. *See id.* at 6-8. Atwood takes the position she was entitled to rely upon medical staff's advice and guidance and "there are no facts pled to show that [she] knew that Turn Key could not provide adequate medical care to [McCullough], that she ignored that risk, and was deliberately indifferent to a serious medical need." *Id.* at 7. The Court disagrees.[4]

---

[4] Notably, most of the cases relied upon by Atwood to support her position were in a different procedural posture. *Hollis v. Davis*, Case No. 13-CV-590-CVE, 2014 WL 7184406 (N.D. Okla. Dec. 16, 2024), *Estate of Beauford v. Mesa Cnty., Co.*, 35 F.4th 1248 (10th Cir. 2022), and *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400 (10th Cir. 2009) all evaluated a deliberate indifference claim at the motion for summary judgment stage. The *Hollis* opinion explains, "summary judgment on defendant's provision of medical care defense can be granted in plaintiff's favor only if plaintiff shows that no reasonable juror could find that defendants could reasonably rely on the advice of [the] medical staff as to plaintiff's care." *Hollis*, 2014 WL 7184406 at *6. Whether Atwood reasonably relied upon medical staff's advice is beyond the scope

McCullough alleges he arrived at Carter County Detention Center on October 22, 2023, with "5 fractured ribs, 2 lacerations on [his] liver, 1 laceration on [his] lung and a broken wrist in a half cast." Dkt. No. 1 at 9. He was scheduled for surgery two weeks later. *Id.* Therefore, it is plausible that, upon his arrival at Carter County Detention Center, Atwood was aware he had ongoing medical needs. Further, McCullough alleges that his mother provided Atwood with his medical records and communicated to Atwood that McCullough was not receiving the medical care he needed. *Id.* at 11. McCullough alleges Atwood was provided with this specific information on December 18, 2023. *Id.* McCullough also alleges that he submitted "tickets" to Atwood requesting proper medical care. *Id.* at 10. McCullough did not receive medical care until January 25, 2024, almost two months after McCullough requested medical attention from Atwood, on December 2, 2023. *See id.* at 10-12.

"A prison official who serves solely 'as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role.'" *Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (quoting *Self v. Crum*, 439 F. 3d 1227, 1232 (10th Cir. 2006)). McCullough sufficiently alleges Atwood knew of his need for ongoing medical attention after his discharge from the hospital and Atwood failed to provide him with access to that care. Dkt. No. 1 at 10-12. At this stage of the proceeding, accepting McCullough's allegations as true and construing them in the light most favorable to McCullough, McCullough's Complaint contains enough facts to state a plausible deliberate indifference claim against Atwood. Accordingly, the Court declines to dismiss McCullough's deliberate indifference claim against Atwood, individually, for failure to state a claim.

---

of McCullough's responsibility to state a claim at this juncture.

## III. Qualified Immunity Defense

Atwood also contends she is entitled to qualified immunity. Dkt. No. 148 at 8-9. The United States Court of Appeals for the Tenth Circuit provides the following guidance concerning a qualified immunity defense at the motion to dismiss stage:

> Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises the defense of qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (quotation omitted). Thus, to survive a motion to dismiss based on qualified immunity, a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).
>
> But to trigger the plaintiff's two-part burden, a defendant must first "adequately present" the qualified-immunity defense. *Tillmon v. Douglas County*, 817 F. App'x 586, 589 (10th Cir. 2020); *see Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (holding that "the burden of pleading" a qualified-immunity defense "rests with the defendant"). And to adequately present the defense, the defendant must not only explicitly raise it, *see Montoya v. Vigil*, 898 F.3d 1056, 1063–64 (10th Cir. 2018), but must also plead the defense beyond a "perfunctory assertion," *Tillmon*, 817 F. App'x at 590. Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test. *See id.*; *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (holding that a defendant's "qualified-immunity argument was underdeveloped" where it "contain[ed] mostly general legal statements and empty platitudes").
>
> Finally, in raising a qualified-immunity defense, a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard. *Tillmon*, 817 F. App'x at 590; *Montoya*, 898 F.3d at 1064–65 (holding that a "failure-to-state-a-claim argument, without more, is insufficient to raise qualified immunity" because "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985))).

*Berryman v. Niceta*, 143 F.4th 1134, 1140-41 (10th Cir. 2025).

Here, Atwood fails to adequately raise qualified immunity. Concerning the first prong,

Atwood made only a "passing reference[] to her separate arguments that [McCullough's] complaint failed to state a claim for relief." *Berryman*, 143 F. 4th at 1141; *see also* Dkt. No 148 at 9 ("Plaintiff has not demonstrated that Devra Atwood committed an underlying violation of Plaintiff's constitutional rights.").

Concerning the second prong, Atwood merely states, "[t]here is no Supreme Court, Tenth Circuit, or Oklahoma case law that suggests that Devra Atwood's reliance on medical personnel to provide Plaintiff with medical care would violate a clearly established right." Dkt. No. 148 at 9. In *Berryman*, the defendant's "only statement regarding the second prong was that '[n]o clearly established law clearly shows this pattern of facts as supporting personal liability,'" and the Tenth Circuit found this "perfunctory assertion of qualified immunity" to be "insufficient." *Berryman*, 143 F. 4th at 1142.

Furthermore, Atwood, once again, relies on a summary judgment case, *Bowlds v. Turn Key Health*, Case No. CIV-19-726-SLP, 2022 WL 193012 (W.D. Okla. Jan. 20, 2022) (unpublished), to support her position that her purported reliance on medical personnel does not amount to a constitutional violation. However, as noted above, this inquiry is beyond the scope of the instant Motion. Throughout her Motion, Atwood attempts to recast McCullough's obligation to state a claim as requiring him to plead against her "reliance on medical professional's advice" defense. A plaintiff has no such obligation. *See, e.g., Anderson Living Trust v. WPX Energy Production, LLC,* CIV-12-0040 JB/WPL, 2015 WL 3543011, at *38 (D.N.M. May 26, 2015) (unpublished) ("The plaintiff need not, however, plead around the defendant's affirmative defenses, nor is the plaintiff obligated to plead facts that enable the Court to adjudicate affirmative defenses at the motion-to-dismiss stage.").

Finally, Atwood's "cursory argument makes no attempt to analyze any [of the alleged]

facts within the applicable legal framework, and so it provides no clear factual or legal basis for asserting the defense." *Berryman*, 143 F.4th at 1141. For these reasons, the Court declines to grant Atwood's Motion based on qualified immunity.

**IV. Conclusion**

As outlined above, the Court fully considered McCullough's claim against Defendant Devra Atwood. The Court dismisses McCullough's official capacity claim against Atwood. However, McCullough stated a plausible claim for deliberate indifference against Atwood, in her individual capacity, and this claim is not subject to dismissal at this time.

IT IS THEREFORE ORDERED that Atwood's Motion to Dismiss [Dkt. No. 148] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that McCullough may proceed with his deliberate indifference claim against Atwood, in her individual capacity.

IT IS FURTHER ORDERED that the Complaint is dismissed, in part, as to McCullough's official capacity claim against Atwood.

IT IS FURTHER ORDERED that Atwood shall file her answer to McCullough's Complaint within fourteen (14) days of the date of this Order.

Dated this 23rd day of October, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE